JAMES WEBER ET AL., Plaintiffs and Appellants, *v.* GABRIEL MEJÍAS ET AL., Defendants and Appellees.

No. 12636.   Decided March 23, 1962.

*Canales & Segarra, José F. Quetglas Alvarez* for appellants. *Juan Enrique Géigel, Guillermo Silva, Jaime A. García Blanco,* and *Hernán C. Pesquera* for appellees.

Division composed of Mr. Chief Justice Negrón Fernández, Mr. Justice Blanco Lugo, and Mr. Justice Dávila.

PER CURIAM.

Plaintiff Dorothy Weber suffered a fall while she descended a stairway leading to an interior apartment adjacent to the residence of defendant Gabriel Mejías, which was occupied by the latter's mother and sister. As a result of the fall plaintiff fractured her left humerus and numerous hematomas appeared in various parts of her body. She filed a complaint claiming damages alleging that the efficient and proximate cause of the accident was defendant's negligence "consisting in keeping therein a defective stairway which was inadequate and inappropriate for the use for which it was intended." At the preliminary hearing the plaintiff specified the following facts as constituting the negligence charged: (1) defendant failed to take the ordinary precautions to keep the stairway dry; (2) the treads of each step are so narrow that there is not sufficient space to place the foot; (3) the finish of the treads is of "totally smooth" concrete, which makes them intrinsically slippery; (4) the steps have a cement (sic) nosing, polished and smooth, which have a bevelled edge; (5) the inclination angle is excessive and inherently dangerous; (6) the stairway lacked safety devices, such as rubber matting and handrail.

On the day of the accident Mrs. Weber had visited the tenants of the mirador with respect to the sewing of some dresses, as she had done on several other occasions during the three preceding years. Having concluded her visit, she was returning to her home and for that purpose she utilized the only exit available, the afore-mentioned stairway. She descended to the second flight which consists of a landing and six steps, and she slipped on the third step. This flight had no roofing and was wet from a rainfall a few moments before. Plaintiff was carrying a dress hanging on her left

arm and was descending "sideways[1] and very carefully because the steps seemed to be narrow and I felt insecure" (Tr. Ev. 6); she tried to lean on one of the supports at the end of the stairs which often serves the purpose of a handrail, but even then she slipped with the afore-mentioned consequences.

The trial court determined that the stairway had no defects of construction,[2] "that it could be considered as presenting *a special danger*, outside of the ordinary risk every stairway presents." And it added that "although it is true that the surface (meaning the tread) of the steps is of smooth cement (*sic*), *that surface cannot be distinguished from the infinite number of smooth cement (sic) surfaces that stairways have in Puerto Rico."* (Italics ours.) It also stated that plaintiff assumed the risk of descending the stairway which was wet, even though she "knew it well." It dismissed the complaint.

■ 1. For the purposes of determining the liability of the owner of the property we should establish as the starting point that plaintiff was an invitee at the place where the accident occurred. This is true whether we apply the "economic benefit" test—Mrs. Weber used the stairway in an activity which was materially beneficial to the tenants— or the "invitation" test—the conduct of the occupants led plaintiff to believe that the premise was intended to be used

---

[1] During the course of her testimony plaintiff stated that she was always careful on the stairway "because the tread is narrow and I always descended a bit sideways" (Tr. Ev. 21) "so that my foot would not protrude from the tread." (Tr. Ev. *id.*)

[2] We agreed with the trial court in that the evidence is sufficient to establish that the measurements of the stairway and the angle of inclination are within acceptable norms of construction, and that any existing difference is tolerable and admissible. We also accept that the side supports serve adequately as a handrail and that the bevelled edge of the steps does not constitute a risk which should concern us for the purposes of determining liability. Respecting the application of the requirements of several codes of construction for determining civil liability for accidents in buildings, see *Santaella* v. *Licari*, 83 P.R.R. 855 (1961).

by guests. 2 HARPER AND JAMES, The Law of Torts 1478–1479 (1956).

■ 2. The above-mentioned authors [3] expose the theory applicable to the cases of invitees in the following words:

"The occupier's duty to the invitee is one of due care under all circumstances. If plaintiff is an invitee at the time and place of his injury, the occupier, of course, owes him all the duties he owes to trespassers and licensees. Thus the occupier must use care not to injure plaintiff by negligent activity, and also to warn him of latent perils actually known to the occupier. *In addition, the occupier owes the duty of care to inspect his premises and to discover dangerous conditions.* This is the most prominent difference between the rights of invitees and those of licensees, and its prominence has sometimes obscured the fact that the invitor's duty of reasonable inspection is only part of a larger duty of reasonable care to make the premises reasonably safe. As in negligence cases generally, the invitor may be held even though there was no default in inspection, if the injury may be traced to faulty construction or other negligence in creating the dangerous condition, or *to the failure to take reasonable precautions to protect invitees from dangers foreseeably attendant on the arrangement or the use of the premises.* Thus, in a recent California case, plaintiff was hurt by falling when his swivel stool at a cocktail bar broke. Defendant showed that the break was caused by metal fatigue in a pin that held the seat in place, that inspection had been careful and regular, and that the defect might escape the most careful inspection. The court held, however, that the jury might find that the very likelihood of such an undiscoverable defect called for a bigger pin in the first place, or perhaps 'an additional pin or other safety device.'" (Italics ours.)

In *Goose* v. *Hilton Hotels*, 79 P.R.R. 494, 498 (1956), we stated thus:

"Goose was of course an 'invitee' of the hotel. 'The possessor is not an insurer of the safety of business visitors, and his duty extends only to the exercise of reasonable care for their protection. There is no liability for harm resulting from dan-

---

[3] HARPER AND JAMES, *op. cit.* at pp. 1487–88.

gerous conditions of which he does not know, and which a reasonable inspection would not have discovered, *or from conditions from which no unreasonable risk was to be anticipated.* Likewise, in the usual case, there is no obligation to protect the visitor against dangers which are known to him, *or which are so apparent that he may reasonably be expected to discover them and be able to protect himself*... The visitor is entiled, however, to assume that proper care has been exercised to make the premises safe for him, and he is not required, as in the case of a licensee, to be on the alert for possible defects.' "

██ The manner in which the accident occurred shows that claimant took precautions upon descending the stairway. If anything can be said is that she was very careful, for she descended sideways because she felt insecure. In spite of her prudent conduct, however, she suffered a fall with serious consequences. We have before us a difficult case because the stairway was not ostensibly defective. However, it is proper to emphasize that the surface of the steps was smooth, that together with an open construction, it tended to make them slippery when they became wet from the rain. This is so, independently of the precautions which might have reasonably been taken by whomever used the stairway. The owner's duty was to foresee that contingency which created a dangerous situation under specific circumstances. *Cf. Baralt* v. *Commonwealth*, 83 P.R.R. 268 (1961). His liability is predicated on the lack of foreseeability and he is not relieved because the construction is common and ordinary in this area. We point out incidentally that a surface may have a smooth appearance, without being intrinsically slippery when certain abrasive materials are used in its construction to prevent the existence of such a condition. In the case at bar no evidence was presented to that effect, and therefore, we may only consider the fact that the steps became slippery when wet due to its smooth finish. Under the attendant circumstances of this case, we believe that the efficient cause of the accident was keeping a stairway with smooth steps and

that because these were exposed they became slippery when wet. The owner was negligent in failing to foresee the consequences this would bring.

As we pointed out before, plaintiff was careful upon descending the stairway and observed the conduct of any prudent person in identical circumstances. It is unnecessary, therefore, to discuss the question of assumption of risk to which the trial court refers.[4]

The judgment will be reversed and the complaint sustained, ordering the defendants to pay to plaintiff *in solidum* the sum of $6,000 for physical sufferings and mental anguish and $427 to cover the reasonable expenses for medical treatment which she incurred. The payment of the costs, including those of the appeal, but excluding attorney's fees, are imposed.

---

[4] On the date of the accident the amendment to § 1802 of the Civil Code which provides that "Concurrent imprudence of the party aggrieved does not exempt from liability, but entails a reduction of the indemnity" was not in effect.